IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BARRY LEONARD WISE,

        Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

CIVIL ACTION FILE NO.

1:15-CV-2271-WSD-JFK

## FINAL REPORT AND RECOMMENDATION

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied his disability application. For the reasons set forth below, the court **RECOMMENDS** that the Commissioner's decision be **REVERSED** and that the case be **REMANDED** for further proceedings.

## I.    Procedural History

Plaintiff Barry Leonard Wise filed an application for supplemental security income on March 13, 2012, alleging that he became disabled on January 12, 2011. [Record ("R.") at 198, 348-56]. After Plaintiff's application was denied initially and

on reconsideration, an administrative hearing was held on August 12, 2013. [R. at 214-41, 287-99]. The Administrative Law Judge ("ALJ") issued a decision on November 7, 2013, denying Plaintiff's applications, and the Appeals Council denied Plaintiff's request for review on April 23, 2015. [R. at 8-14, 195-206]. Plaintiff filed a complaint in this court on June 29, 2015, seeking judicial review of the Commissioner's final decision. [Doc. 3].

## II.   Facts

The ALJ found that Plaintiff has osteoarthritis of the hip and osteoarthritis of the right knee. [R. at 200]. Although these impairments are "severe" within the meaning of the Social Security regulations, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 201]. Plaintiff was found to be incapable of performing any of his past relevant work. [R. at 205]. However, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. [R. at 205-06]. The ALJ, therefore, found that Plaintiff has not been under a disability since March 13, 2012, the date the application was filed. [R. at 206].

2

The decision of the ALJ [R. at 198-206] states the relevant facts of this case as modified herein as follows:

The claimant was 49 years old on the date his disability application was filed. He has past relevant work as a forklift operator and a general laborer.  A review of the record reveals that the claimant has a history of lower back and hip pain.  Records from Grady Health System show that he reported back pain radiating to his right knee.  The back pain was shooting, constant, and worse with bending and walking.  He displayed pain with flexion of his hip, and his examination was positive for crepitus on right knee flexion.  His physical examination was otherwise unremarkable with normal range of motion noted.  Radiological studies taken in April of 2011 revealed degenerative changes of the spine and osteoarthritis of the right hip.  Studies of his knee were unremarkable.  The claimant was instructed to use over-the-counter medication. (Exhibits 2F, 3F, 4F, 9F and 12F).

In April 2011, the claimant submitted to a physical consultative evaluation with Tiffany S. Lee, M.D., with complaints of disability secondary to hypertension, arthritis, and hepatitis C.  He reported that his arthritic pain affected his hips and knees, was constant, and rated 10 out of a possible 10.  He also reported being diagnosed with depression.  He was noted as being in no acute distress and, upon examination, had an

3

unremarkable presentation with full range of motion globally, 5/5 grip and pinch, and normal motor strength.  His gait and station were normal, and he neither required nor used an assistive device.  The claimant was able to climb on and rise from the chair/exam table from a standing to sitting position and a sitting to standing position without assistance.  There were no signs of claudication noted, and the claimant's mental status was unremarkable with appropriate mood and affect reported.  After the evaluation, Dr. Lee reported that the claimant had significant physical limitations or restrictions.  (Exhibit 5F).

The claimant returned to Dr. Lee in May of 2012 for a second physical consultative evaluation at which time he added complaints of shortness of breath, diaphoresis, and headaches in the occipital area and above his right eye.  He stated that he had two to three headaches per week.  He reported that his hip and knee pain caused him to almost fall five to six times a day and that his pain was relieved with over the counter medication.  Upon examination, his uncorrected visual acuity was 20/20 OD and 20/25 OS and his blood pressure was 200/120.  He displayed decreased range of motion of his lumbar spine and his bilateral knees.  That said, he was able to squat farther than noted during his first examination: 3/4 of the distance versus 1/2 of the distance a year earlier.  The claimant ambulated with an abnormal gait and station but

4

did not use an assistive device.  Radiological studies revealed severe right and mild left osteoarthritis of the hips, very mild degenerative changes of the right knee, and unremarkable films of the lumbar spine.  After the evaluation, Dr. Lee reported the following:

> Claimant presented to this clinic with the above allegations and physical findings.  He gave a good effort to complete the requested tasks.  Based on today's examination, claimant is expected to take all medications as prescribed and to keep all scheduled appointments.  He is reminded that uncontrolled hypertension can lead to an increased risk of heart attack, strokes, kidney disease, and possibly death.  He showed decreased range of motion in his back and lower extremities.  He is encouraged to follow up with the physical therapist for further evaluation of his gait for stability and safety.  He should avoid activities that require heavy lifting, excessive bending, distance walking, or kneeling until further evaluation has been completed and treatment options have been considered.  He verbalized an understanding and showed a willingness to comply with these recommendations.

(Exhibit 7F).

On September 26, 2012, the claimant submitted to a physical consultative evaluation with Diana Whiteman, M.D.  Upon examination, bilateral crepitus was noted with the claimant reporting joint pain in his hands, knees, and hips.  He also reported tenderness to palpation over the bilateral SI joint with no range of motion limitations.  The claimant's uncorrected visual acuity was noted as being 20/40 OD and 20/40 OS, and his blood pressure was reported as 156/94.  His physical

5

examination was otherwise unremarkable.   After the evaluation, Dr. Whiteman

reported the following:

> The claimant is a 49 year-old who is being followed by physicians at
> Grady primary care.  Based on the history given, records, medications,
> and this examination, without diagnostic confirmatory testing, his
> diagnoses are: chronic pain - possibly polyarthritis, hypertension, and
> history of hepatitis C.  His vision is fair to poor without corrective lens,
> but may improve with corrective lens.  He did not have any hearing
> impairments.  Conversational speech was intact.  He is obese for his
> height and it is not inconceivable that he would have back pain or joint
> pain.  Weight reduction could be extremely beneficial for him.  With his
> 11th grade high school education, subsequent GED background, and prior
> job experience, he may not be limited to the types of employment that
> would require physical labor.  Based on his history of back and joint pain
> and this examination today, he should try to vary his position (standing
> and sitting) to avoid prolonged postures, which can exacerbate pain and
> stiffness.   Given his infectious disease history, he may have some
> restrictions relating to employment in food service.  The claimant should
> follow-up with his physician(s) for the allegations listed above.  If this
> claimant is awarded disability benefits, he should be able to manage his
> own funds independently based on this examination.

(Exhibit 8F).

On January 31, 2013, the claimant presented to Grady Memorial Hospital with

complaints of rib pain secondary to being mugged and kicked in the ribs.  He reported

that he usually takes over the counter medication for pain but that it was not working.

He also stated that he had run out of his blood pressure medication.  His blood pressure

was 200/108.  He indicated that he smoked cigarettes but planned on quitting.  The

6

claimant was prescribed medication and discharged.  He returned in February of 2013 reporting an injury to his left knee.  He stated that his knee would give.  He stated that he ran out of the medication he was given during his January 2013 visit.  Radiological studies of the claimant's left knee showed mild osteoarthritis which was more prominent in the patellofemoral compartments.  He was instructed to use ice packs and rest the injured area as much as possible.  He was given a prescription for a non-steroidal anti-inflammatory.  It was noted that he had refills on his previous prescription.  He stated that he did not fill it for financial reasons but that he would borrow money and fill the prescription.  (Exhibit 10F).

During follow up visits to Grady Hospital, the claimant reported continued hip and knee pain.  In July of 2013, he acknowledged that he did not use ice/heat or exercise.  A cane was suggested for comfort, and he was instructed to use ice/heat and non-steroidal anti-inflammatories.  It was also stressed that he lose weight.  It was noted that x-rays and MRIs confirmed osteoarthritis of the hip and knee.  (Exhibits 11F, 13F, 14F, 15F, and 16F).

The claimant testified that he has pain that is severe to the point it interferes with concentration and ability to watch TV or read.  However, he also testified that he spends much of the day playing chess and checkers outside the mission.  He stated that

7

he always uses a cane since he was given it in July 2012, but the consultative examination records from September of 2012 specifically note that he had no assistive device. The claimant testified that he could not raise his arms overhead, but he had no real answer for why he was able to raise them over his head during his consultative evaluations. The claimant generally presented with full range of motion of all joints. Of note is the fact that the claimant reported doing odd jobs like mowing lawns, which is contrary to his reports of disability. The claimant complained of headaches, but this was during a time that he was noncompliant with his medication and his blood pressure was elevated to 200/120.

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

## III.    Standard of Review

An individual is considered to be disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically

8

acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C. §§ 423(d)(2) and (3).

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   Id. at 1440.  "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).   Under the regulations as promulgated by the Commissioner, a five step sequential procedure is

9

followed in order to determine whether a claimant has met the burden of proving his disability.  See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must prove that he is not engaged in substantial gainful activity.  See id.  The claimant must establish at step two that he is suffering from a severe impairment or combination of impairments.  See id.  At step three, the Commissioner will determine if the claimant has shown that his impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.  If the claimant is able to make this showing, he will be considered disabled without consideration of age, education, and work experience.  See id.  "If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work."  Doughty, 245 F.3d at 1278.  "At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work."  Id.  If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  See 20 C.F.R. §§ 404.1520(a), 416.920(a).

10

## IV.   Findings of the ALJ

The ALJ made the following findings of fact and conclusions of law:

1.   The claimant has not engaged in substantial gainful activity since March 13, 2012, the application date.  (20 C.F.R. § 416.971, *et seq.*).

2.   The claimant has the following severe impairments: osteoarthritis of the hip and osteoarthritis of the right knee.   (20 C.F.R. § 416.920(c)).

3.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4.   The claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) except that the claimant should: be able to alternate sitting/standing every 30 minutes while remaining at workstation; only occasionally climb, stoop, kneel, crouch, and crawl.

5.   The claimant is unable to perform any past relevant work.  (20 C.F.R. § 416.965).

6.   The claimant was born on December 17, 1962, and was 49 years old, which is defined as a younger individual age 18-49, on the date the application was filed. The claimant subsequently changed age category to closely approaching advanced age. (20 C.F.R. § 416.963).

7.   The claimant has at least a high school education and is able to communicate in English.  (20 C.F.R. § 416.964).

8.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable

AO 72A

(Rev.8/82)

job skills.  (See Social Security Ruling 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  (20 C.F.R. §§ 416.969 and 416.969(a)).

10.     The claimant has not been under a disability, as defined in the Social Security Act, since March 13, 2012, the date the application was filed.  (20 C.F.R. § 416.920(g)).

[R. at 198-206].

## V.      Discussion

Plaintiff Wise argues that the court should reverse the ALJ's decision denying his claim for disability benefits.  [Doc. 12].  According to Plaintiff, the ALJ's residual functional capacity ("RFC") assessment was not supported by substantial evidence and was the product of legal error.  [Id. at 8-12].  Plaintiff also contends that the ALJ's credibility determination was erroneous and that the ALJ posed an incomplete hypothetical question to the vocational expert ("VE") at the administrative hearing. [Id. at 12-15].  Plaintiff's arguments are based on his contention that the ALJ erred when she failed to find that Plaintiff needed a cane for walking or standing and when the ALJ stated in her decision that Plaintiff reported doing odd jobs like mowing lawns.

12

### A.    RFC Assessment

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments. . . . Along with his age, education and work experience, the claimant's residual functional capacity is considered in determining whether the claimant can work." Lewis, 125 F.3d at 1440 (citing 20 C.F.R. §§ 404.1545(a), 404.1520(f)).  "RFC includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, coworkers and work pressure." Dempsey v. Comm'r of Social Security, 454 Fed. Appx. 729, 731 n.3 (11th Cir. 2011) (citation omitted).  In determining the claimant's RFC, the ALJ is required to consider the limiting effects of all the claimant's impairments, even those that are not severe. See Phillips, 357 F.3d at 1238 ("[T]he ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case."); 20 C.F.R. § 404.1545(e).

The ALJ in the present case found that Plaintiff has the RFC to perform light work as defined by the relevant Social Security regulation except that he is limited to jobs allowing him to alternate sitting/standing every 30 minutes while remaining at his workstation and that he can only occasionally climb, stoop, kneel, crouch, and crawl.

AO 72A

(Rev.8/82)

[R. at 201].  Plaintiff argues that the ALJ's RFC assessment erroneously failed to include Plaintiff's use of a cane.  [Doc. 12 at 8-12].  The issue is significant because at the administrative hearing, the VE testified that Plaintiff would not be able to perform any jobs in the regional or national economy if he required the use of a cane for standing or walking.  [R. at 235].

Social Security Ruling ("SSR") 96-9p provides, in part: "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed. . . .  The adjudicator must always consider the particular facts of a case."  The ALJ presumably found that Plaintiff did not need an assistive device as the ALJ did not include it in the RFC assessment.  [R. at 201].  However, the ALJ offered little discussion regarding this finding.  The ALJ merely wrote that Plaintiff "stated he always uses a cane since he was given it in July 2012,[1] but the consultative examination notes from September of 2012 specifically notes that he has no assistive device."  [R. at 204].  The ALJ also referenced a treatment note from July 2013 in which, according to the ALJ, a "cane was suggested for comfort."  [Id.].  The court finds, for the reasons discussed *infra*, that the ALJ did

---

[1]It is not clear how the ALJ arrived at this date.

14

not properly evaluate Plaintiff's RFC regarding his use of a cane and that the assessment was not supported by substantial evidence.

At the administrative hearing, it was noted that Plaintiff was ambulating with the use of a cane. [R. at 219]. Plaintiff testified that he began using the cane in the latter part of 2011 or early 2012 and that he uses it every time he stands.[2] [R. at 223, 225]. However, in May 2012, consultative examiner Dr. Tiffany Lee noted that Plaintiff "does not use an assisted device for ambulation." [R. at 202, 513]. Dr. Lee found that Plaintiff had crepitus in both knees with decreased range of motion and that his ambulation was with abnormal gait and station. [R. at 514-15]. Dr. Lee, who noted that Plaintiff reported "'almost falling' 5 to 6 times per day," advised that Plaintiff avoid activities that require, *inter alia*, "distance walking." [R. at 513, 515]. Dr. Diana Whiteman performed a consultative exam in September 2012 and found bilateral knee crepitus with decreased range of motion. [R. at 525-28]. Dr. Whiteman reported that Plaintiff's gait was steady and that he "was ambulating today without any assistive device." [R. at 203-04, 525]. Approximately ten months later, in July 2013, Dr.

---

[2]The administrative hearing took place in August 2013, and Plaintiff testified that he had been using the cane for approximately a year and a half to two years. [R. at 225].

15

Margarita Ramos-Gonzalez examined Plaintiff and wrote a treatment plan that included a "cane for comfort." [R. at 562].[3]

The Commissioner argues that the "ALJ considered Dr. Ramos-Gonzalez's suggestion along with the other evidence to find that Plaintiff had not been prescribed a cane and that it was not medically necessary." [Doc. 13 at 6]. The court disagrees. The ALJ noted the inconsistencies between Plaintiff's testimony about his constant use of a cane and the consultative exams in May and September 2012 which reported that during those times, Plaintiff was ambulating without an assistive device. However, the ALJ offered no explanation regarding Dr. Ramos-Gonzalez's treatment plan for Plaintiff to use a cane. [R. at 562]. The ALJ also did not make a finding or otherwise discuss whether Plaintiff had been prescribed a cane or whether it was medically necessary.

SSR 96-9p, as noted *supra*, provides that a hand-held assistive device is a medical requirement only if medical documentation establishes the need for a such a device to aid in walking or standing. The Commissioner contends that the record does

---

[3]The fact that Dr. Ramos-Gonzalez's treatment note was issued only a month before the administrative hearing would support a finding that Plaintiff's functional limitations resulting from his knee impairments were progressively getting more severe.

16

not indicate that a physician prescribed a cane. [Doc. 13 at 5]. While Dr. Ramos-Gonzalez did not use the word "prescribe," her treatment note indicates that she believed that Plaintiff should use a cane to alleviate pain.[4] [R. at 562]. The record also reveals that Dr. Ramos-Gonzalez contacted a social worker to help Plaintiff obtain a cane. [R. at 562, 575]. This documentation supports Plaintiff's contention that a cane is medically necessary for ambulating and standing. Other documents in the record are consistent with Dr. Ramos-Gonzalez's opinion that Plaintiff's lower extremity impairments were of such severity that he should use a cane. For example, examination of Plaintiff's left knee in February 2013, which was limited by acuity of pain, revealed antalgic gait, reduced range of motion, and patellar tenderness. [R. at 555-56]. And an MRI of Plaintiff's left knee taken in May 2013 showed "a large, radial tear with associated complex tears involving the posterior horn of the medial meniscus which extend into the body. Subsequent extrusion of the medial meniscus is present." [R. at 563].

Despite the record evidence, there is no indication in the ALJ's decision that she evaluated, in accordance with SSR 96-9p, whether an assistive device was medically

---

[4] If the ALJ needed clarification regarding Dr. Ramos-Gonzalez's opinion about whether a cane was medically required for Plaintiff, the ALJ was free to recontact the physician. See 20 C.F.R. §§ 404.1520b and 416.920b.

required for Plaintiff to walk or stand.  This evaluation is important, as previously noted, because the VE testified at the administrative hearing that no jobs would be available for Plaintiff if he required the use of a cane for standing or walking.[5]  In light of these facts, the undersigned finds that the ALJ committed error when evaluating Plaintiff's RFC and that substantial evidence does not support the RFC assessment. Remand is warranted on this basis.

## B.    Credibility Determination

Plaintiff next argues that the ALJ erred when evaluating his credibility.  [Doc. 12 at 12-14].  When a claimant seeks to establish disability through subjective testimony of pain, a "pain standard" established by the Eleventh Circuit applies.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  The claimant can satisfy this standard by showing: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."  Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing

---

[5]In addition, as discussed *infra*, the ALJ's decision to discredit Plaintiff's testimony was based in part on the mistaken belief that Plaintiff performed odd jobs like mowing lawns after his alleged onset date.  This credibility determination clearly influenced the ALJ's assessment of Plaintiff's RFC.

Holt, 921 F.2d at 1223).   "The 'pain standard' is applicable to other subjective symptoms as well."  Crow v. Comm'r, Social Security Admin., 571 Fed. Appx. 802, 807 (11th Cir. 2014) (citing Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so."  Wilson, 284 F.3d at 1225 (citing Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The relevant Social Security regulations provide that factors which will be considered by the ALJ in evaluating a claimant's subjective symptoms include: daily activities; location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate his symptoms; treatment received and measures used, other than medication, for the relief of symptoms; and any other factors concerning the functional limitations and restrictions due to the claimant's symptoms.  See 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p.  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (citing MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986)).

19

Plaintiff testified and reported to physicians that due to pain and weakness in his back, knees, and hips, he has significant difficulty walking, standing, and keeping his balance. [R. at 221-25, 478-79, 491-93, 513-15, 524-26, 555, 561-62, 569]. He stated that he has "shooting" and constant pain, that he is significantly limited in his daily activities and requires the use of a cane, and that he almost falls many times per day. [Id.]. The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." [Doc. 12 at 12-14; R. at 202]. The ALJ provided a number of specific reasons supported by the record for discrediting Plaintiff's testimony. [R. at 204]. The ALJ, for example, noted that Plaintiff "testified that he has pain that is severe to the point it interferes with concentration and ability to watch TV or read. However, he also testified that he spends much of the day playing chess and checkers outside the mission." [R. at 204, 222-23, 230-32]. The ALJ also pointed out that, although Plaintiff testified that he began using a cane in 2011 or 2012, consultative examiners noted in reports from May and September 2012 that during the examinations Plaintiff was ambulating without an assistive device. [R. at 202-04, 223, 225, 513, 525]. Nevertheless, as discussed *supra*, the ALJ did not properly evaluate record evidence, especially the July 2013 treatment

20

note from Dr. Ramos-Gonzalez, which supports Plaintiff's subjective complaints regarding his need for a cane when ambulating and standing. [R. at 562].

The ALJ also misstated the record when she offered reasons for her credibility determination. In her explanation for finding that Plaintiff's claim of disability is not supported by the record, the ALJ wrote, "Of note is the fact [that] the claimant reported doing odd jobs like mowing lawns, which is contrary to his reports of disability." [R. at 204]. This is incorrect. Plaintiff did testify at the administrative hearing that he "used to do odd jobs" like cutting the grass. [R. at 221]. However, Plaintiff made it clear that his performance of these tasks was "years ago," before his health began deteriorating. [Id.]. Later in the administrative hearing, Plaintiff was asked and testified to the following:

> Q. In 2011, were you doing household repairs?
> A. No, no, I wasn't.
> Q. Were you mowing lawns, cutting grass?
> A. No, that's work I had done previous in the past before I got to this situation, before I got into this hell.

[R. at 224-25].

The Commissioner argues that there is support for the ALJ's finding regarding Plaintiff's daily activities and cites to a function report completed by Plaintiff in July 2012 wherein he described going to Home Depot or a local truck stop in the mornings

AO 72A
(Rev.8/82)

to look for work.  [Doc. 13 at 11; R. at 428].  However, the ALJ did not cite to this evidence in her decision and there is no indication that it factored into her credibility determination.  The undersigned "decline[s] . . . to affirm simply because some rationale might have supported the ALJ's conclusion."  Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984).

In summary, the ALJ's decision to discredit Plaintiff's testimony was based, at least in part, on the ALJ's mistaken belief that Plaintiff performed odd jobs like mowing lawns after his alleged onset of disability.  The court cannot assume that the ALJ would have made the same credibility determination if she had correctly understood that these activities took place before Plaintiff's health began deteriorating. Given this error, the undersigned concludes that remand is necessary in order for the ALJ to reevaluate Plaintiff's credibility.

### C.    ALJ's Step Five Finding and Hypothetical Question

The ALJ is required at the fifth step of the sequential evaluation to determine whether the claimant is able to perform other work besides his past relevant work.  See Doughty, 245 F.3d at 1278.  In this case, the ALJ found that, although Plaintiff could not perform his past work, there are jobs that exist in significant numbers in the national economy that he can perform.  [R. at 205-06].  In making this finding, the ALJ

22

relied on the testimony of a VE who responded to a hypothetical question posed by the ALJ which included Plaintiff's limitations as found in the RFC assessment. [R. at 205-06, 234-37]. The VE testified that a person with the limitations described by the ALJ would be able to perform such jobs as table worker, machine tender, and assembler. [R. at 206, 234-35]. Plaintiff argues that the ALJ committed error at step five because her hypothetical question failed to accurately account for all of Plaintiff's limitations. [Doc. 12 at 14-15].

"At the fifth step of the sequential process, an ALJ may rely solely on the testimony of a VE in determining whether work is available in significant numbers in the national economy that a claimant is able to perform." Hurtado v. Comm'r of Social Security, 425 Fed. Appx. 793, 795 (11th Cir. 2011) (citing Jones v. Apfel, 190 F.3d 1224, 1230 (11th Cir. 1999)). "For the [VE's] testimony to constitute substantial evidence, 'the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'" Id. (quoting Jones, 190 F.3d at 1229). Here, the ALJ's hypothetical question to the VE described the findings made by the ALJ in her RFC assessment, and Plaintiff makes no argument to the contrary. [Doc. 12 at 14-15; R. at 234-35]. However, as discussed *supra*, the court has concluded that the ALJ erred

23

when she assessed Plaintiff's RFC regarding his need to use a cane.[6] The VE testified at the administrative hearing that a person with the limitations described by the ALJ in the RFC would not be able to perform any jobs in the regional or national economy if he required the use of a cane for standing or walking. Because substantial evidence does not support the ALJ's physical RFC assessment and the ALJ's hypothetical question to the VE was based on the RFC assessment, the court likewise concludes that the ALJ's finding at step five was not supported by substantial evidence.

## VI. Conclusion

Based on the forgoing reasons and cited authority, the undersigned **RECOMMENDS** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings in accordance with the above discussion.

If the District Court adopts the undersigned's recommendation, **IT IS FURTHER RECOMMENDED** that, in the event that benefits are awarded to Plaintiff upon remand, Plaintiff's attorney be permitted to file a motion for approval of attorney's fees under 42 U.S.C. §§ 406(b) and 1383(d)(2) no later than thirty days

---

[6]The ALJ's finding that Plaintiff's testimony lacked credibility also played a role in the RFC assessment.

after the date of the Social Security letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past-due benefit calculation stating the amount withheld for attorney's fees. Defendant's response, if any, shall be filed no later than thirty days after Plaintiff's attorney serves the motion on Defendant. Plaintiff shall file any reply within ten days of service of Defendant's response.

All pretrial matters have been concluded with the issuance of this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1), this Court's Local Rule 72.1, and Standing Order 14-01 (N.D. Ga. August 15, 2014). The Clerk, therefore, is **DIRECTED** to terminate the reference to the Magistrate Judge.

**SO RECOMMENDED**, this 11th day of July, 2016.


JANET F. KING
UNITED STATES MAGISTRATE JUDGE

25