IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BARRY LEONARD WISE,

                **Plaintiff,**

    v.                                   **1:15-cv-2271-WSD**

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Janet F. King's Final

Report and Recommendation [15] ("R&R").  The R&R recommends the Court

reverse and remand the final decision of the Commissioner of the Social Security

Administration ("Commissioner") denying Plaintiff Barry Leonard Wise's

("Plaintiff") application for supplemental security income ("SSI").

## I.      BACKGROUND

On March 13, 2002, Plaintiff filed his SSI application, alleging that he

became disabled on January 12, 2011.  (Record [8] ("R.") at 198, 348-56).  The

Social Security Administration ("SSA") denied Plaintiff's application initially and

on reconsideration.  On August 12, 2013, Plaintiff appeared at a hearing before an

Administrative Law Judge ("ALJ").  (R. at 214-41, 287-99).  On

November 7, 2013, the ALJ issued a decision denying Plaintiff's SSI claim and, on
April 23, 2015, the Appeals Council denied Plaintiff's request for review.  (R. at 8-
14, 195-206).  On June 29, 2015, Plaintiff filed his Complaint [3], seeking judicial
review of the Commissioner's final decision.

A.    Facts[1]

1.    Plaintiff's Medical History

Plaintiff, who worked previously as a forklift operator and a general laborer,
was 49 years old when he filed his SSI application.  On April 29, 2011, Plaintiff
told doctors he felt back pain radiating to his right knee.  The back pain was
shooting, constant, and worse with bending and walking.  During his physical
examination, he experienced pain with flexion of his hip, and tested positive for
crepitus on right knee flexion.  His examination was otherwise unremarkable and
his range of motion was normal.  (See R. at 479).  Radiological studies revealed
degenerative changes of the spine and osteoarthritis of the right hip.  (See
R. at 531-541).

On August 18, 2011, Plaintiff underwent a "disability examination" with
Doctor Tiffany S. Lee.  Plaintiff told the doctor he suffered from multiple chronic

---

[1]    The parties have not objected to the facts in the R&R and, finding no plain
error in them, the Court adopts them.  See Garvey v. Vaughn, 993 F.2d 776, 779
n.9 (11th Cir. 1993).

conditions, including hypertension, arthritis, and hepatitis C.  He rated the intensity of his arthritic pain as 10 out of 10, and said it was constant and affected his hips and knees.  He also said he suffered from depression.  Doctor Lee noted he was not in acute distress and had full range of motion, a 5/5 grip and pinch, and normal motor strength.  His gait and station were normal and, according to the doctor's notes, he did not use an assistive device for stability.  Plaintiff was able, without assistance, to use and rise from the chair and exam table.  There were no signs of claudication, and Plaintiff's mental status appeared normal.  Based on the evaluation, Doctor Lee concluded that Plaintiff had "significant physical limitations or restrictions."  (See R. at 491-493).

On May 25, 2012, Plaintiff returned to Doctor Lee for a second physical evaluation.  Plaintiff complained about shortness of breath, diaphoresis, and headaches in the occipital area and above his right eye.  He said he had two to three headaches per week.  He reported that his hip and knee pain caused him to "almost fall[]" five or six times a day, and that his pain was relieved with over-the-counter medication.  His uncorrected visual acuity was 20/20 OD and 20/25 OS and his blood pressure was 200/120.  Although his lumbar spine and bilateral knees showed decreased range of motion, he was able to squat farther than noted during his first examination.  The doctor's notes state that Plaintiff's gait and

3

station were abnormal but that he did not use an assistive device.  Radiological

studies revealed severe right and mild left osteoarthritis of the hips, mild

degenerative changes of the right knee, and unremarkable films of the lumbar

spine.  After the evaluation, Doctor Lee reported the following:

> Based on today's examination, [Plaintiff] is expected to take all
> medications as prescribed and to keep all scheduled appointments.  He
> is reminded that uncontrolled hypertension can lead to an increased
> risk of heart attack, strokes, kidney disease, and possibly death.  He
> showed decreased range of motion in his back and lower extremities.
> He is encouraged to follow up with the physical therapist for further
> evaluation of his gait for stability and safety.  He should avoid
> activities that require heavy lifting, excessive bending, distance
> walking, or kneeling until further evaluation has been completed and
> treatment options have been considered.  He verbalized an
> understanding and showed a willingness to comply with these
> recommendations.

(See R. at 512-522).

On September 26, 2012, Plaintiff had a physical evaluation with Doctor

Diana Whiteman.  The doctor noted that Plaintiff had bilateral knee crepitus with

decreased range of motion.  Plaintiff reported joint pain in his hands, knees and

hips.  Plaintiff also reported tenderness to palpation over the bilateral SI joint, but

did not show limitations in his range of motion.  Plaintiff's uncorrected visual

acuity was 20/40 OD and 20/40 OS, and his blood pressure was 156/94.  His

physical examination was otherwise unremarkable.  Doctor Whiteman reported

that Plaintiff's gait was steady and that he "was ambulating today without any

assistive device."  The doctor's report also stated:

> Mr. Wise is a 49 year-old who is being followed by physicians at
> Grady primary care.  Based on the history given, records, medications,
> and this examination, without diagnostic confirmatory testing, his
> diagnoses are:  chronic pain - possibly polyarthritis, hypertension, and
> history of hepatitis C.  His vision is fair to poor without corrective
> lens, but may improve with corrective lens.  He did not have any
> hearing impairments.  Conversational speech was intact.
>
> He is obese for his height and it is not inconceivable that he would
> have back pain or joint pain.  Weight reduction could be extremely
> beneficial for him.  With his 11th grade high school education,
> subsequent GED background, and prior job experience, he may not be
> limited to the types of employment that would require physical labor.
> Based on his history of back and joint pain and this examination
> today, he should try to vary his position (standing and sitting) to avoid
> prolonged postures, which can exacerbate pain and stiffness.  Given
> his infectious disease history, he may have some restrictions relating
> to employment in food service.  The patient should follow-up with his
> physician(s) for the allegations listed above.  If this patient is awarded
> disability benefits, he should be able to manage his own funds
> independently based on this examination.

(See R. at 524-526).

On January 31, 2013, Plaintiff visited Grady Memorial Hospital,

complaining of rib pain after being mugged and kicked in the ribs.  He reported

that he usually takes over the counter medication for pain but that it was not

working.  He also said he had run out of his blood pressure medication.  His blood

pressure was 200/108.  He stated that he smoked cigarettes but planned on quitting.
Plaintiff was prescribed medication and discharged.  (See R. at 553-555).

On February 22, 2013, Plaintiff returned to Grady Memorial Hospital,
reporting an injury to his left knee after twisting it while walking down stairs.  He
said that his knee would sometimes "give" and that he ran out of the medication he
was given on his January 2013, visit.  Radiological studies of Plaintiff's left knee
showed mild osteoarthritis, especially in the patellofemoral compartments.  His
knee exam was "limited by acuity of pain" but revealed "antalgic gait, reduced
range of motion, . . . [and] patellar tenderness."  He was prescribed a non-steroidal
anti-inflammatory and was instructed to rest and use ice packs.  The doctor noted
Plaintiff had refills remaining on his previous prescription.  Plaintiff stated that he
did not fill the prescription for financial reasons but that he would now borrow
money to do so.  (See R. at 555-560).

During follow up visits to Grady Memorial Hospital, Plaintiff continued to
report pain in his hip and knee.  In May 2013, an MRI of Plaintiff's left knee
showed "a large radial tear with associated complex tears involving the posterior
horn of the medial meniscus which extend into the body.  Subsequent extrusion of
the medial meniscus is present." (R. at 563).  On July 14, 2013, he was examined
by doctor Margarita Ramos-Gonzalez, who wrote a treatment plan that included a

6

"cane for comfort," non-steroidal anti-inflammatories, and ice and heat.  The doctor also stressed that he should lose weight and, based on x-rays and MRIs, confirmed that Plaintiff suffered from osteoarthritis of the hip and knee.  Doctor Ramos-Gonzalez contacted a social worker to help Plaintiff obtain a cane.  (See R. at 561-562, 575).

2.   ALJ's Decision

On November 7, 2013, the ALJ issued a decision denying Plaintiff's SSI claim on the basis that Plaintiff is not disabled.  The ALJ made the following findings of fact and conclusions of law:

(1)   The claimant has not engaged in substantial gainful activity since March 13, 2012, the application date.  (20 C.F.R. § 416.971, *et seq.*).

(2)   The claimant has the following severe impairments:  osteoarthritis of the hip and osteoarthritis of the right knee.  (20 C.F.R. § 416.920(c)).

(3)   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

(4)   The claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) except that the claimant should: be able to alternate sitting/standing every 30 minutes while remaining at workstation; only occasionally climb, stoop, kneel, crouch, and crawl.

(5)   The claimant is unable to perform any past relevant work.  (20 C.F.R. § 416.965).

7

(6)   The claimant was born on December 17, 1962, and was 49 years old, which is defined as a younger individual age 18-49, on the date the application was filed.  The claimant subsequently changed age category to closely approaching advanced age.  (20 C.F.R. § 416.963).

(7)   The claimant has at least a high school education and is able to communicate in English.  (20 C.F.R. § 416.964).

(8)   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  (See Social Security Ruling 82-41; 20 C.F.R. Part 404, Subpart P, Appendix 2).

(9)   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 C.F.R. §§ 416.969 and 416.969(a)).

(10)  The claimant has not been under a disability, as defined in the Social Security Act, since March 13, 2012, the date the application was filed. (20 C.F.R. § 416.920(g)).

(R. at 198-206).

3.    R&R

On July 11, 2016, the Magistrate Judge issued her R&R.  In it, she found that the ALJ's residual functional capacity ("RFC") determination was deficient and not supported by substantial evidence, that the ALJ erroneously evaluated Plaintiff's credibility, and that substantial evidence did not support the ALJ's conclusion that Plaintiff is able to perform work other than his past relevant work. The parties did not file objections to the R&R.

## II.   LEGAL STANDARDS

###   A.   Review of a Magistrate Judge's Report and Recommendation

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam).  A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).  If no party has objected to the report and recommendation, a court conducts only a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam).  The parties here do not object to the R&R and the Court thus reviews it for plain error.

###   B.   Review of a Decision of the Commissioner of Social Security

A court must "review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Id. at 1440.  "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the

9

decision reached is supported by substantial evidence."  <u>Martin v. Sullivan</u>, 894

F.2d 1520, 1529 (11th Cir. 1990).  "We may not decide the facts anew, reweigh the

evidence, or substitute our judgment for that of the [Commissioner]."

<u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting

<u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983)) (internal quotation

marks omitted).

      C.    <u>Standard for Determining Disability</u>

      An individual is considered disabled if he is unable "to engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. § 423(d)(1)(A).  The impairment must result from anatomical,

psychological, or physiological abnormalities that are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques, and must be of such

severity that the claimant is not only unable to do his previous work but cannot,

considering age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy.  <u>See</u> 42 U.S.C.

§§ 423(d)(2)-(3).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).  To determine if an applicant has proved his disability, an ALJ performs a five-step evaluation.  See id.; 20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must prove that he is not engaged in substantial gainful activity.  See id.  The claimant must establish at step two that he is suffering from a severe impairment or combination of impairments.  See id.  At step three, the Commissioner will determine if the claimant has shown that his impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.  If the claimant is able to make this showing, he will be considered disabled without consideration of age, education, and work experience.  See id.  "If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work." Doughty, 245 F.3d at 1278.  "At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work." Id.  If, at any

11

step in the sequence, a claimant can be found disabled or not disabled, the

sequential evaluation ceases and further inquiry ends. See 20 C.F.R.

§§ 404.1520(a), 416.920(a).

## III.   DISCUSSION

A.     Analysis

1.     RFC Assessment

"The residual functional capacity is an assessment, based upon all of the

relevant evidence, of a claimant's remaining ability to do work despite his

impairments. . . .  Along with his age, education and work experience, the

claimant's residual functional capacity is considered in determining whether the

claimant can work." Lewis, 125 F.3d at 1440 (citing 20 C.F.R. §§ 404.1545(a),

404.1520(f)).  "RFC includes physical abilities, such as sitting, standing or

walking, and mental abilities, such as the ability to understand, remember and

carry out instructions or to respond appropriately to supervision, coworkers and

work pressure."  Dempsey v. Comm'r of Social Security, 454 Fed. App'x. 729,

731 n.3 (11th Cir. 2011) (citation omitted).  In assessing the claimant's RFC, the

ALJ must consider the limiting effects of all the claimant's impairments, including

those that are not severe.  See Phillips, 357 F.3d at 1238 ("[T]he ALJ must

determine the claimant's RFC using all relevant medical and other evidence in the

12

case."); 20 C.F.R. § 404.1545(e).

The ALJ found that Plaintiff has the RFC to perform light work but that he is limited to jobs allowing him to alternate every thirty minutes between sitting and standing, and that he can only occasionally climb, stoop, kneel, crouch, or crawl. (R. at 201). Plaintiff argues that the ALJ's RFC assessment was deficient because it did not state that Plaintiff requires a cane. ([12] at 8-12).

"To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed. . . . The adjudicator must always consider the particular facts of a case." Social Security Ruling 96-9p. In her August 2011, medical report, Doctor Tiffany Lee states that Plaintiff's gait and station were normal and that "[n]o assistive device is used for stability." (R. at 493). In Doctor Lee's May 2012, report, she states that Plaintiff's gate and station were abnormal, that he had crepitus and decreased range of motion in his knees, that he reported "almost falling" five or six times per day, that he should avoid "distance walking" and certain other physical activities, and that he "does not use an assisted device for ambulation." (R. at 513-515). In September 2012, Doctor Whiteman reported that Plaintiff had bilateral knee crepitus with decreased range of motion, that his gait was steady, and

13

that he "was ambulating today without any assistive device."  (R. at 525).  In

February 2013, Plaintiff told doctors that he twisted his knee, radiological studies

showed osteoarthritis in his knee, and a knee examination revealed "antalgic gait,

reduced range of motion, . . . [and] patellar tenderness."  (See R. at 555-560).  In

May 2013, an MRI of Plaintiff's knee revealed a "large radial tear" and, in

July 2013, Doctor Margarita Ramos-Gonazalez wrote a treatment plan that

included "a cane for comfort" and contacted a social worker to help Plaintiff obtain

a cane.  (See R. at 561-563, 575).  At the administrative hearing, Plaintiff testified

that he began using a cane in late 2011 or early 2012, and that he always uses a

cane when he stands.   (R. at 223, 225).

    The ALJ noted that Plaintiff "stated he always uses a cane since he was

given it in July 2012, but the consultative examination notes from September

of 2012 specifically notes that he has no assistive device."  (R. at 204).  The ALJ

also stated, without explanation, that a July 2013, treatment note suggested a cane

for comfort.  (R. at 204).  The Magistrate Judge found that the ALJ did not

determine expressly whether Plaintiff was prescribed a cane or whether an assistive

device was medically necessary.  The Magistrate Judge found further that this

omission rendered deficient the ALJ's RFC assessment and that the record

supports Plaintiff's contention that he requires a cane for walking and standing.

14

(See R&R at 13-18).  The Court finds no plain error in these findings.

    2. Step Five Finding

  "At the fifth step [of the disability analysis], the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work."  Doughty, 245 F.3d at 1278. "[A]n ALJ may rely solely on the testimony of a [vocational expert ("VE")] in determining whether work is available in significant numbers in the national economy that a claimant is able to perform."  Hurtado v. Comm'r of Social Security, 425 Fed. App'x. 793, 795 (11th Cir. 2011) (citing Jones v. Apfel, 190 F.3d 1224, 1230 (11th Cir. 1999)).  "For the [VE's] testimony to constitute substantial evidence, 'the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'"  Id. (quoting Jones, 190 F.3d at 1229).

  The ALJ found that, under step 5 of disability analysis, Plaintiff is not disabled because "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (R. at 205-206).  In reaching this determination, the ALJ relied on VE testimony that a person with Plaintiff's RFC, as defined by the ALJ, could find and perform work in the national economy.

(R. at 206, 234-235).  However, the VE testified that a person with Plaintiff's RFC, as described by the ALJ, would not be able to perform any jobs in the regional or national economy if he required a cane for standing or walking.  The Magistrate Judge found that, because the ALJ's RFC assessment was deficient, the ALJ's finding at step five was not supported by substantial evidence.  The Court finds no plain error in this determination.

### 3.    Plaintiff's Credibility

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing:  (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.  If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (internal citations omitted).

In evaluating a claimant's subjective symptoms, an ALJ may consider the claimant's daily activities; location, duration, frequency and intensity of the claimant's symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate his symptoms; treatment received and measures used, other than medication, for the

16

relief of symptoms; and any other factors concerning the functional limitations and restrictions due to the claimant's symptoms.  See 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling 96-7p.  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (citing MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986)).

Plaintiff testified and reported to physicians that he has significant difficulty walking, standing, and keeping his balance.  (R. at 221-225, 478-479, 491-493, 513-515, 524-526, 555, 561-562, 569).  He stated that he has "shooting" and constant pain, that he is significantly limited in his daily activities, that he requires a cane, and that he "almost fall[s]" several times per day.  (Id.).  The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible."  ([12] at 12-14; R. at 202).  The ALJ noted that, although Plaintiff said he began using a cane in 2011 or 2012, physical examination reports state that Plaintiff ambulated without an assistive device.  (R. at 202-04, 223, 225, 513, 525).  As explained above, however, the ALJ failed to evaluate properly whether Plaintiff required an assistive device.

The ALJ also stated that "[o]f note is the fact [that] the claimant reported doing odd jobs like mowing lawns, which is contrary to his reports of disability."

17

(R. at 204).  This is incorrect because Plaintiff testified that he "used to do odd jobs" like cutting the grass, but that this was "years ago," before his health began deteriorating.  (R. at 221, 224-225).  The Magistrate Judge found that the ALJ's decision to discredit Plaintiff's testimony was based on mistaken beliefs and that remand is necessary so the ALJ can reevaluate Plaintiff's credibility. (R&R at 18-22).  The Court finds no plain error in this finding.

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge Janet F. King's Final Report and Recommendation [15] is **ADOPTED**.

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **VACATED** and that this matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

**IT IS FURTHER ORDERED** that, in the event benefits are awarded to Plaintiff upon remand, Plaintiff's attorney may file a motion for attorney's fees under 42 U.S.C. § 406(b) and 42 U.S.C. § 1383(d)(2) no later than thirty (30) days after the date of the Social Security letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past-due benefit calculation stating the amount

withheld for attorney's fees.  Defendant's response, if any, shall be filed no later than thirty (30) days after Plaintiff's attorney serves the motion on Defendant. Plaintiff shall file any reply within ten (10) days of service of Defendant's response.

**SO ORDERED** this 1st day of August, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE